**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

DEJUAN B. THORNTON-BEY,

        Plaintiff

    v.

FEDERAL BUREAU OF PRISONS, *et al.*,

        Defendants.

CIVIL ACTION NO. 1:22-CV-01790

(MEHALCHICK, J.)

## MEMORANDUM

Plaintiff DeJuan B. Thornton-Bey ("Thornton-Bey"), an inmate in the custody of the Federal Bureau of Prisons ("BOP"), initiated this *Bivens*[1] action pursuant to 28 U.S.C. § 1331. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 64). Named as Defendants are the BOP, and the following BOP employees: Kyle Ackley, Jesse Bohner, Matthew Bolt, Nathaniel Carper, David Christensen, Jace Conklin, Brian Fogleman, Brenton Gundrum, Alan Hetner, Jeremy Jarrett, Darren Johnston, Matthew McMillen, Jed Nolan, Trevor Patterson, Wade Reese, Donald Simpson II, Matthew Smith, Brian Snyder, Jeremy Sweeting, Rocco Vuocolo II, Thomas Wickham, Abram Wright, and Dustin Yoho.

Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) and/or for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 76). For the reasons set forth below, the Court will grant Defendants' motion.

---

[1] *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). A *Bivens* civil rights action asserted under 28 U.S.C. § 1331 is evaluated using the same standards applicable to a 42 U.S.C. § 1983 civil rights action. *See Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975). To state a claim under *Bivens*, a plaintiff must allege that he was deprived of a federal right by a person acting under color of federal law. *See Young v. Keohane*, 809 F. Supp. 1185, 1199 (M.D. Pa. 1992).

## I.   BACKGROUND AND PROCEDURAL HISTORY[2]

The crux of Thornton-Bey's claim is that Defendants injured his anus by waiving a handheld metal detector near his body. Below is a comprehensive recitation of the relevant facts.

### A.   FACTS REGARDING ADMINISTRATIVE EXHAUSTION

The BOP maintains a computerized index, the Administrative Remedy Generalized Retrieval, which documents all administrative remedies filed by Thornton-Bey during his incarceration. (Doc. 82, at 1-2, ¶ 1). The BOP gives each administrative remedy filed by an inmate an identification number upon submission. (Doc. 82, at 2, ¶ 2). Each number is then followed by a letter representing the level at which that each remedy was filed. (Doc. 82, at 2, ¶ 2). "F" means the remedy was filed with the warden at the institution level. (Doc. 82, at 2, ¶ 2). "R" indicates the remedy was filed with the Regional Office. (Doc. 82, at 2, ¶ 2). "A" means the remedy was filed at the Central Office. (Doc. 82, at 2, ¶ 2). The letter is then

---

[2] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. LOCAL RULE OF COURT 56.1. Unless otherwise noted, the factual background herein derives from Defendants' Rule 56.1 statement of material facts. (Doc. 82). Thornton-Bey did not file a response to Defendants' statement of material facts, despite being ordered to do so. (*See* Doc. 87, at 1, ¶ 2 (advising Thornton-Bey that failure to file a responsive statement of material facts would result in the facts set forth in Defendants' statement of material facts being deemed admitted)). The Court accordingly deems the facts set forth by Defendants to be undisputed. *See* LOCAL RULE OF COURT 56.1; *see also Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (not precedential) (upholding this Court's decision to strike non-movant's non-responsive counterstatement of facts under Local Rule 56.1); *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (finding that "the District Court is in the best position to determine the extent of a party's noncompliance with Local Rule 56.1, as well as the appropriate sanction for such noncompliance").

followed by a number to indicate how many times a remedy was filed or re-filed at the specified level. (Doc. 82, at 2, ¶ 2). The Administrative Remedy Generalized Retrieval provides details concerning each administrative remedy filed by the inmate, including the administrative remedy ID number, the date the remedy was received, a description of the issues raised, the three-letter code of the facility where the event occurred, the date the remedy was responded to, the status code, and the status reason. (Doc. 82, at 2, ¶ 3).

An administrative remedy may be rejected at any level if not properly or timely submitted. (Doc. 82, at 2, ¶ 4). If a remedy is rejected, it is returned to the inmate and the inmate is provided a written notice explaining the reason for the rejection. (Doc. 82, at 2, ¶ 4). The BOP does not ordinarily maintain a copy of an administrative remedy that has been rejected. (Doc. 82, at 2, ¶ 4). A rejection of an administrative remedy is not a decision on the merits. (Doc. 82, at 2, ¶ 4).

Thornton-Bey submitted a total of 284 administrative remedies during his federal imprisonment. (Doc. 82, at 3, ¶ 5). Between July 7, 2022 (the date of the first incident alleged in the amended complaint), and November 9, 2022 (the date the amended complaint was filed), Thornton-Bey submitted 40 administrative remedies, many of which included complaints about staff and medical issues (Remedy Numbers 1131794 (F1 and R1) 1134559-F1, 1136806-F1, 1138352-F1, 1138454 (F1, F2, F3, and R1), 1140629-F1, 1142547 (F1 and R1), 1148180 (F1, R1, R2, and R3), 1153957-R1, 1155256-R1, 1156107-R1, 1158466 (F1 and R1), 1158412-R1, and his complaints under the Prison Rape Elimination Act ("PREA") (Remedy Number 1139509 (F1, F2 and R1)). (Doc. 82, at 3, ¶ 6). None of the administrative remedies were submitted at the Central Office level except Remedy Number 1138460. (Doc. 82, at 3, ¶ 6).

On October 25, 2022, Thornton-Bey submitted two administrative remedies complaining about the use of metal detectors at the institution, under Remedy Number 1138460:

(1) the institution received Remedy Numbers 1138460-F1 and 1138460, both on October 25, 2022; and

(2) the acting complex warden responded to Remedy Number 1138460-F1 on October 25, 2022, to which the warden responded on November 10, 2022, and informed Thornton-Bey that he had discussed his complaints of rectal burning with the Clinical Director, Psychiatrist and Psychologist, but refused a rectal exam, and that the handheld metal detector would continue to be used according to policy.

(Doc. 82, at 3-4, ¶ 7).

Thornton-Bey submitted two administrative remedies at the Regional Office level under Remedy Number 1138460:

(1) the Regional Office received Remedy Number 1138460-R1 on November 23, 2022, which the Regional Director denied on February 6, 2023, noting the warden adequately responded to his concerns and that based on a review of his Bureau Electronic Medical Record ("BEMR"), Thornton-Bey was receiving appropriate medical treatment. BEMR indicated that despite a history of weight loss and perianal pain, Thornton-Bey had refused a recommended rectal examination and fecal occult blood test, but a gastroenterology consultation was ordered for further treatment options; and

(2) the Regional Office rejected a second appeal (Remedy Number 1138460-R2), submitted on February 27, 2023, after it had already responded to Remedy Number 1138460-R1.

(Doc. 82, at 4, ¶ 8).

Thornton-Bey submitted four administrative remedies at the Central Office level under Remedy Number 1138460, ultimately resulting in the denial of his claim by the Administrator of National Inmate Appeals on July 19, 2022:

(1) The Central Office received Remedy Number 1138460-A1 on January 9, 2023, but rejected it as being filed at the wrong level because Thornton-Bey had not attached a copy of his Regional Appeal (Codes WRL and RAP).

(2) The Central Office received Remedy Number 1138460-A2 on March 7, 2023, but rejected it as untimely (Code RJA). Thornton-Bey was instructed that he could resubmit his administrative remedy with a staff memorandum stating the untimely submission was not his fault (Code MEM).

(3) The Central Office received Remedy Number 1138460-A3 on May 9, 2023, but rejected it because Thornton-Bey did not submit a complete set of four carbonized copies (Code QUA). Thornton-Bey was advised he could resubmit his remedy in proper form within 15 days (Code RSA).

(4) The Central Office received Remedy Number 1138460-A4 on June 12, 2023, and the Administrator of National Inmate Appeals denied it on July 19, 2023, noting his concurrence with the way the warden and Regional Director previously responded to Thornton-Bey's concerns. The denial outlined details of a succeeding review of Thornton-Bey's medical record, including ten Health Services evaluations since October 2022 to address his medical complaints, and his refusal of recommended EGD (endoscopy), colonoscopy, and fecal occult blood tests. The response also informed Thornton-Bey that there is no medical evidence to support his claims concerning the use of the handheld metal detector wand or the need to stop using it.

(Doc. 82, at 5, ¶ 9).

Since July 7, 2022, Thornton-Bey has attempted to appeal disciplinary incident reports, but he never appealed any of those administrative remedies to the Central Office level (Remedy Numbers 1128063-F1, 1151936-F1 and 1151936-R1). (Doc. 82, at 6, ¶ 10). Thornton-Bey submitted administrative remedies alleging dirty cell conditions, but those remedies were only submitted at the institutional level (Remedy Numbers 1158412-F1 and 1148412-F2). (Doc. 82, at 6, ¶ 11). Thornton-Bey submitted a single administrative remedy to complain about the use of restraints (Remedy Number 1128971-F1). (Doc. 82, at 6, ¶ 12). Thornton-Bey submitted numerous other administrative remedies to complain about issues unrelated to this lawsuit, such as mail (Remedy Number 1126120-F1), custody classification

(Remedy Numbers 1128971-R1 and 1128971-R2), a clothing issue (Remedy Number 1132949-F1), inadequate showering and shaving time (Remedy Numbers 1135126-F1 and 1135126-R1), abuse of the administrative remedy program (Remedy Numbers 1139502-F1 and 1139502- R1), an incident on February 14, 2023 (Remedy Number 1153687-R1), an unspecified complaint (Remedy Numbers 1158464-F1 and 1158464-R1), clarification on the use of the word "hollow" in a document (Remedy Numbers1170653-F1), and a confiscated tablet (Remedy Number 1183505-F1). (Doc. 82, at 6, ¶ 13). None of these remedies were submitted at the Central Office level. (Doc. 82, at 6, ¶ 13).

B.  FACTS FROM THORNTON-BEY'S MEDICAL RECORDS

Thornton-Bey's medical history includes diagnoses for delusional disorder, schizophrenia with paranoid delusions, psychoses, and severe drug use disorders for cocaine, cannabis, and opioids. (Doc. 82, at 7, ¶ 14).

In 2012, after nursing staff administered a tuberculin test, Thornton-Bey submitted complaints that Health Services staff were trying to kill him by injecting a substance called "TOBOS" which he believed would stop his breathing. (Doc. 82, at 7, ¶ 15). Before his arrival at the United States Penitentiary, Allenwood ("USP-Allenwood"), Thornton-Bey restricted his food intake because he believed meat served at the institution resulted in dehydration, leading to his transfer to a medical facility where he later reported delusions about false imprisonment, staff's intent to harm him, and food tampering. (Doc. 82, at 3, ¶ 16).

Thornton-Bey arrived at USP-Allenwood on February 9, 2016. (Doc. 82, at 7, ¶ 17). On July 20, 2022, Thornton-Bey asked to speak to a medical provider and, for the first time, informed a nurse that his anal canal hurt when he was scanned between the legs with a handheld metal detector. (Doc. 82, at 7, ¶ 18).

During a psychiatry visit on July 26, 2022, Thornton-Bey complained of pain between his legs and under his buttocks, asked about electromagnetic forces, and suggested an electromagnetic device in his rectum was causing the pain. (Doc. 82, at 8, ¶ 19). The psychiatrist noted that since 2016, Thornton-Bey had not previously presented as agitated as he was during this visit. (Doc. 82, at 8, ¶ 19). The psychiatrist messaged physicians about the possibility that he was having delusional beliefs secondary to prostatitis. (Doc. 82, at 8, ¶ 19).

For approximately a year, while he remained at USP-Allenwood, Thornton-Bey voiced persistent complaints to Health Services staff and his psychiatrist of experiencing perianal pain and burning when handheld metal detector wands were used over a surgical rod in his hip. (Doc. 82, at 8, ¶ 20). Thornton-Bey sought to document his complaints and to be excused from being metal detected. (Doc. 82, at 8, ¶ 20).

Thornton-Bey's medical records demonstrate that his psychiatrist and Health Services staff concluded his belief of perianal burning and pain being caused by a handheld metal detector being passed over the rod in his hip was the result of delusional thinking. (Doc. 82, at 8, ¶ 21).

On August 19, 2022, Thornton-Bey declined a rectal exam and screening for prostate cancer by a physician. (Doc. 82, at 8-9, ¶ 22). The physician offered this exam based on the psychiatry team's concern for possible prostatitis due to Thornton-Bey's complaints of hip pain radiating from his rectal area and his complaint of feeling warmth and pain during the use of the metal detector. (Doc. 82, at 8-9, ¶ 22). The physician concluded that, given Thornton-Bey's history, his condition was consistent with psychosis. (Doc. 82, at 8-9, ¶ 22).

On November 3, 2022, Thornton-Bey informed a nurse that he saw bright red blood in his stool and stated his belief that the electrical current from the metal detectors interacting

with the rod in his leg caused deterioration of anal tissue. (Doc. 82, at 9, ¶ 23). The nurse ordered a fecal occult blood test, but Thornton-Bey did not complete the test. (Doc. 82, at 9, ¶ 23). On January 11, 2023, January 20, 2023, and January 30, 2023, Thornton-Bey consulted with gastroenterology specialists. (Doc. 82, at 9, ¶ 24). They recommended that Thornton-Bey undergo an endoscopy and colonoscopy in a hospital setting due to his history of weight loss and perianal pain. (Doc. 82, at 9, ¶ 24). The procedure was discontinued after Thornton-Bey refused his medical trip for the procedure on May 25, 2023. (Doc. 82, at 9, ¶ 24). Thornton-Bey's medical records reflect his stated intent to submit complaints under the PREA if the use of the metal detector wand continued, as well as his receipt of disciplinary incident reports for submitting false PREA complaints and for being insolent to staff concerning the use of the metal detector wand. (Doc. 82, at 9-10, ¶ 25). In December 2022, medical staff noted that Thornton-Bey had a 24-pound weight loss over four months and noted his history of poor food intake due to paranoid delusions of food tampering. (Doc. 82, at 10, ¶ 26).

Thornton-Bey transferred out of USP-Allenwood on August 7, 2023. (Doc. 82, at 10, ¶ 27). He arrived at his next designated facility, the United States Penitentiary, Atlanta, on August 21, 2023. (Doc. 82, at 10, ¶ 27). Thornton-Bey's medical record reflects that after leaving USP-Allenwood on August 7, 2023, he made no further complaints to medical staff of burning in the perianal area, blood in his stool, or his belief that his reported symptoms were caused by the handheld metal detector wand. (Doc. 82, at 10, ¶ 28).

C.  BOP POLICIES PROVIDING INMATES ALTERNATE REMEDIES TO *BIVENS* ACTIONS

The BOP's Administrative Remedy Program is available to allow an inmate to seek formal review of an issue relating to any aspect of his own confinement. (Doc. 82, at 10, ¶ 29).

The BOP's Sexually Abusive Behavior Prevention and Intervention Program provides procedures to address and prohibited and/or illegal sexually abusive behavior involving staff perpetrators against an inmate victim. (Doc. 82, at 11, ¶ 30). The program provides policies for inmates to privately report sexual abuse and sexual harassment and for both criminal and administrative agency investigations of allegations of sexual abuse and harassment and possible disciplinary actions for staff, contractors, volunteers, and inmate perpetrators. (Doc. 82, at 11, ¶ 30).

Defendants move to dismiss Thornton-Bey's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 76). Defendants seek summary judgment based on Thornton-Bey's failure to exhaust his administrative remedies with respect to his *Bivens* claims[3] and because qualified immunity shields Defendants from liability. (Doc. 83, at 14-18; Doc. 83, at 37-45).

Defendants' Rule 12(b) motion raises both jurisdictional and merits challenges to Thornton-Bey's claims. First, Defendants argue that sovereign immunity bars this Court's subject matter jurisdiction over Thornton-Bey's official capacity claims. (Doc. 83, at 13-14). Second, Defendants argue that the Court should decline to imply a *Bivens* remedy as to Thornton-Bey's First Amendment retaliation claim and Eighth Amendment conditions of confinement claim, physical and sexual assault claim, excessive force, and inadequate medical care claim. (Doc. 83, at 18-37).

---

[3]In accordance with *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), the Court placed the parties on notice that it would consider exhaustion in its role as fact finder and afforded them the opportunity to be heard under *Small v. Camden Cnty.*, 728 F.3d 265 (3d Cir. 2013). (Doc. 87)

Thornton-Bey failed to respond to Defendants' motion and the time for responding has now passed.[4] Therefore, the motion is deemed unopposed and ripe for resolution. The Court's analysis begins, as it must, with Defendants' challenge to the Court's subject matter jurisdiction.

## II.   RULE 12(B)(1) MOTION

### A.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss an action for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the court's subject matter jurisdiction. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In reviewing a facial challenge under Rule 12(b)(1), the standards associated with Rule 12(b)(6) are applicable. *See Gould Elecs. Inc.*, 220 F.3d at 179. In this regard, the court must accept all factual allegations in the complaint as true, and the court may consider only the complaint and documents referenced in or attached to the complaint. In a factual challenge to the court's subject matter jurisdiction, the court's analysis is not limited to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, to resolve any factual issues bearing on jurisdiction. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).

---

[4]Thornton-Bey was directed to file a brief in opposition to Defendants' motion and was admonished that failure to file an opposition brief would result in Defendants' motion being deemed unopposed. (Doc. 87, at 1, ¶ 1) (citing LOCAL RULE OF COURT 7.6).

Once the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *Mortensen*, 549 F.2d at 891. If a dispute of material fact exists, "the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction." *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 290 (3d Cir. 2006); *see also Berardi v. Swanson Mem'l Lodge No. 48*, 920 F.2d 198, 200 (3d Cir. 1990) (stating that a district court must ensure that a plaintiff has "had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing," to support his claim of jurisdiction (citation omitted)).

## B. Official Capacity Claims

Defendants argue that Thornton-Bey's *Bivens* claims against them in their official capacities are barred by sovereign immunity. (Doc. 83, at 13-14). Sovereign immunity bars any claims brought against Defendants in their official capacities. Specifically, sovereign immunity constitutes a jurisdictional bar to claims against the United States and its agencies, unless Congress has specifically waived such immunity. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). "An action against government officials in their official capacities constitutes an action against the United States [and is] barred by sovereign immunity, absent an explicit waiver." *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) (not precedential); *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007) (not precedential).

*Bivens* does not waive sovereign immunity with respect to claims brought against federal employees sued in their official capacities. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the

United States, or the BOP."). Thus, Thornton-Bey's claims against Defendants in their official capacities are barred by sovereign immunity and will be dismissed for lack of jurisdiction. *Lewal*, 289 F. App'x at 516; *Webb*, 250 F. App'x at 471.

## III.    RULE 56 MOTION

### A.    LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." M.D. Pa. L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *Morrison v. United States*, No. 1:20-CV-01571, 2021 WL 4192086, at *3 (M.D. Pa. Sept. 15, 2021) (citing *Mala v. Crown Bay*

*Marina,* Inc., 704 F.3d 239, 245 (3d Cir. 2013) (noting that *pro se* parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants")).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson,* 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.,* 626 F. App'x 384, 389

n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment."). With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

B. Discussion

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). Section 1997e(a) establishes the requirement of administrative exhaustion:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The PLRA "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court…to excuse compliance with the exhaustion

requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules. *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004). The PLRA requires not only technical exhaustion of the administrative remedies, but also substantial compliance with procedural requirements. *Spruill*, 372 F.3d at 227-32; *see also Nyhuis*, 204 F.3d at 77-78. A procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim. *Spruill*, 372 F.3d at 227-32; *see also Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).

The BOP has established a multi-tier system enabling a federal prisoner to seek formal review of any aspect of his imprisonment. 28 C.F.R. §§ 542.10-542.19. Before seeking formal review, an inmate must attempt to informally resolve the issue with institutional staff by completing a BP-8 form. 28 C.F.R. § 542.13. If informal resolution is unsuccessful, the inmate may present the issue to the warden within 20 days of the date of the event giving rise to the administrative remedy request by filing a BP-9 form. 28 C.F.R. § 542.14. The warden has 20 days to respond. 28 C.F.R. § 542.18. An inmate dissatisfied with the warden's response may submit an appeal on a BP-10 form to the BOP Regional Director within 20 calendar days. 28 C.F.R. § 542.15(a). The Regional Director has 30 days to respond to an appeal. 28 C.F.R. § 542.18. If the Regional Director denies the appeal, the inmate may then appeal to the BOP's Central Office, General Counsel, by submitting a BP-11 form within 30 calendar days. 28 C.F.R. § 542.15(a). The Central Office has 40 days to respond. 28 C.F.R. § 542.18. No administrative remedy is considered fully exhausted until it is decided on its merits by the Central Office. 28 C.F.R. §§ 541.10-542.19.

Here, Defendants argue that Thornton-Bey failed to properly exhaust his grievances in the prison's administrative review process prior to proceeding to federal court. (Doc. 83, at 14-18). Defendants have supported their argument with record evidence, including the declaration of BOP Senior Attorney Joshua M. Bower and the BOP Administrative Remedy Generalized Retrieval. (Doc. 82-2; Doc. 82-4). Thornton-Bey has not refuted Defendants' argument and has not provided any evidence, via an affidavit, declaration, or any other statement made under the penalty of perjury to support any claim that the administrative remedy process was not available to him. The record simply does not support a finding that the administrative process was unavailable to Thornton-Bey. To the contrary, it establishes that Thornton-Bey had full and ready access to the administrative remedy process and filed 284 administrative remedies while in BOP custody. Upon review of the evidence, it is clear that Thornton-Bey failed to exhaust administrative remedies regarding his present claims before initiating the instant action. The record reflects that Thornton-Bey filed the following relevant administrative remedies.

On October 25, 2022, Thornton-Bey filed administrative remedy number 1138460-F1 at the institution level concerning the use of metal detectors. (Doc. 82-2, at 4, Declaration of Joshua M. Bowers ("Bowers Decl."), ¶ 15; Doc. 82-4, at 125). On that same date, the warden rejected the remedy and found that this incident was previously investigated in July and August of 2022, and it was determined that there was no staff misconduct. (Doc. 82-2, at 4, Bowers Decl., ¶ 15; Doc. 82-4, at 125).

Also on October 25, 2022, Thornton-Bey filed another administrative remedy— number 1138460-F2—at the institution level involving complaints concerning the use of metal detectors. (Doc. 82-2, at 4, Bowers Decl., ¶ 15; Doc. 82-4, at 126). On November 14, 2022,

the remedy was closed. (Doc. 82-2, at 4, Bowers Decl., ¶ 15; Doc. 82-4, at 126). Thornton-Bey appealed to the Regional Director, designated as administrative remedy number 1138460-R1.  (Doc. 82-2, at 4, Bowers Decl., ¶ 16; Doc. 82-4, at 130). On February 6, 2023, the Regional Director denied the remedy. (Doc. 82-2, at 4, Bowers Decl., ¶ 16; Doc. 82-4, at 130).

On February 27, 2023, Thornton-Bey filed another appeal to the Regional Director, under administrative remedy number 1138460-R2, regarding pain from metal detectors. (Doc. 82-2, at 4, Bowers Decl., ¶ 17; Doc. 82-4, at 135). On April 5, 2023, the Regional Director denied the remedy because Thornton-Bey failed to first file at the institution level. (Doc. 82-2, at 4, Bowers Decl., ¶ 17; Doc. 82-4, at 135).

On January 9, 2023, Thornton-Bey filed an appeal to the Central Office, designated as remedy number 1138460-A1. (Doc. 82-2, at 5, Bowers Decl., ¶ 18; Doc. 82-4, at 132). On January 17, 2023, the Central Office rejected the appeal because it was filed at the wrong level and because Thornton-Bey did not provide a copy of the regional appeal or receipt. (Doc. 82-2, at 5, Bowers Decl., ¶ 18; Doc. 82-4, at 132). On March 7, 2023, Thornton-Bey appealed this denial under number 1138460-A2. (Doc. 82-2, at 5, Bowers Decl., ¶ 18; Doc. 82-4, at 135). On March 27, 2023, the appeal was rejected, noting that the issue was previously addressed and rejected on January 17, 2023. (Doc. 82-2, at 5, Bowers Decl., ¶ 18; Doc. 82-4, at 135).

Thornton-Bey then filed another appeal to the Central Office on May 9, 2023, under remedy number 1138460-A3. (Doc. 82-2, at 5, Bowers Decl., ¶ 18; Doc. 82-4, at 140). On May 22, 2023, the Central Office rejected the appeal based on Thornton-Bey's failure to submit a complete set of appeal documents. (Doc. 82-2, at 5, Bowers Decl., ¶ 18; Doc. 82-4,

at 135). The Central Office also instructed Thornton-Bey to resubmit the appeal within 15 days of the rejection notice. (Doc. 82-2, at 5, Bowers Decl., ¶ 18; Doc. 82-4, at 140).

On June 12, 2023, Thornton-Bey submitted an appeal to the Central Office under remedy number 1138460-A4, wherein he alleged that he was not receiving appropriate medical treatment for rectal pain and burning caused by the use of metal detectors. (Doc. 82-2, at 5, Bowers Decl., ¶ 19; Doc. 82-4, at 142; Doc. 82-5). On July 19, 2023, the Central Office denied the appeal and found that "[t]here is no medical evidence that suggest[s] metal detection causes pain of orthopedic implants." (Doc. 82-2, at 5, Bowers Decl., ¶ 19; Doc. 82-4, at 142; Doc. 82-5).

Thornton-Bey did not file any other administrative remedies with the Central Office in 2023. (Doc. 82-2, at 5, Bowers Decl., ¶ 20; *see generally* Doc. 82-4).

Thornton-Bey, as the adverse party, must raise "more than a mere scintilla of evidence in its favor" and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460 (3d Cir. 1989). Thornton-Bey failed to come forward with *any* evidence that the administrative remedy process was unavailable to him. It is undisputed that Thornton-Bey failed to properly exhaust all levels of review provided by the inmate grievance system. Instead, he bypassed the inmate grievance system and proceeded to federal court.

It is well-settled that administrative remedies must be exhausted *prior* to the initiation of suit. *See Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) ("[A] prisoner must exhaust all available administrative remedies prior to filing suit."); *Millbrook v. United States*, 8 F.Supp.3d 601, 611 (M.D. Pa. 2014) ("Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil

rights action. '[E]xhaustion must occur prior to filing suit, not while the suit is pending.'")
(citations omitted). "[T]he Prison Litigation Reform Act allows for an amended complaint to
allege new and newly exhausted claims addressing incidents that *had not yet transpired* at the
original time of filing." *Washington v. Grace*, 455 F. App'x 166, 16 n.2 (3d Cir. 2011) (*per
curiam*) (not precedential) (emphasis added) (citation omitted). Here, the Central Office
denied Administrative Remedy Number 1138460-A4, concerning the use of handheld metal
detectors, on July 19, 2023. (Doc. 82-2, at 5, Bowers Decl., ¶ 19; Doc. 82-4, at 142; Doc. 82-
5). Thornton-Bey filed his amended complaint on November 8, 2023. (Doc. 64). However,
both the original complaint and the amended complaint concern the very same *Bivens* claim
against the same prison officials arising out the same incidents. "This is not a case where the
cause of action did not yet exist at the time [Thornton-Bey] filed the original complaint."
*Green v. Dep't of Corr.*, 393 F. App'x 20, 24 (3d Cir. 2020) (not precedential). Thornton-Bey's
course of action is precisely the conduct that the PLRA administrative exhaustion
requirement seeks to curtail. His failure to properly exhaust the available administrative
remedies prior to bringing this action compels an entry of summary judgment in favor of
Defendants.

Even had Thornton-Bey properly exhausted, his claims are subject to dismissal, as set
forth below.

## IV.   RULE 12(B)(6) MOTION

### A.   LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move
to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P.
12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first

take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need a court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting

*Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, at 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting FED. R. CIV. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the

plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

    B.  DISCUSSION

    **1.  A Bivens Remedy is not Available for the Retaliation, Conditions of Confinement, Physical and Sexual Assault, and Excessive Force Claims**

Alternatively, Defendants move to dismiss Thornton-Bey's retaliation claim, conditions of confinement claim, physical and sexual assault claim, excessive force claim, and inadequate medical care claim on the basis that there is no *Bivens* remedy available for these First and Eighth Amendment claims following the United States Supreme Court's decision in *Ziglar v. Abbasi*, 582 U.S. 120 (2017). (Doc. 83, at 18-37). For all of these claims—except the inadequate medical care claim discussed in the next section—the Court finds that they present new *Bivens* contexts.

In *Bivens*, the Supreme Court recognized an implied damages remedy for a Fourth Amendment violation committed by federal officials, whose conduct was not encompassed by the statutory remedy available against state actors under 42 U.S.C. § 1983. *See Bivens*, 403 U.S. at 397. Since the *Bivens* decision, the Supreme Court has extended the *Bivens* remedy only twice: first, to a claim for gender discrimination under the Fifth Amendment's Due Process Clause, *see Davis v. Passman*, 442 U.S. 228, 248-49 (1979), and later to a claim for inadequate prison medical care under the Cruel and Unusual Punishment Clause of the Eighth Amendment, *see Carlson v. Green*, 446 U.S. 14, 18-23 (1980).

The *Abbasi* decision invoked by Defendants sets forth a two-part test for determining whether a prospective *Bivens* claim may proceed. First, courts must ascertain whether the case presents a "new context." *Abbasi*, 582 U.S. at 139. If the case differs "in a meaningful way from previous *Bivens* cases decided by th[e Supreme] Court, then the context is new." *Abbasi*, 582 U.S. at 139. And the meaning of "new context" is "broad." *See Hernandez v. Mesa*, 589 U.S. 93, 102 (2020). Second, if the case presents a new context, the court must then consider whether "special factors" counsel against extending the *Bivens* remedy. *See Abbasi*, 582 U.S. at 139-40. This inquiry asks whether "the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quoting *Abbasi*, 582 U.S. at 136). If a court concludes that "even a single reason" exists to pause "before applying *Bivens* in a new context or to a new class of defendants," then special factors counseling hesitation exist and a *Bivens* remedy does not lie. *See Egbert*, 596 U.S. at 492 (quoting *Hernandez*, 589 U.S. at 102) (internal quotation marks omitted); *Hernandez*, 589 U.S. at 102.

The Supreme Court's decision in *Egbert* reemphasized that the Court's continued refusal to "imply a similar cause of action for other alleged constitutional violations" is intentional—recognizing a new *Bivens* cause of action is "a disfavored judicial activity." *See Egbert*, 596 U.S. at 483, 491 (quoting *Abbasi*, 582 U.S. at 136; *Hernandez*, 589 U.S. at 101-03). *Egbert* clarified that the two-step process laid out in *Abbasi* "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *See Egbert*, 596 U.S. at 492. In other words: if there is "*any* rational reason (even one) to think that *Congress* is better suited" to determine the propriety of a cause of action, then a *Bivens* action cannot proceed. *See Egbert*, 596 U.S. at 496. The court must

broadly inquire whether "there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate'"—and if the answer is "yes," or even potentially yes, the plaintiff cannot recover under *Bivens. See Egbert*, 596 U.S. at 496 (quoting *United States v. Stanley*, 483 U.S. 669, 681 (1987)).

The Court proceeds with *Abbasi's* two-step analysis.

Thornton-Bey claims that Defendants issued false disciplinary incident reports against him and placed him in an unsanitary cell in retaliation for filing PREA complaints. (Doc. 64, at 3-4; Doc. 64, at 7). He further asserts that Defendants injured his anus by using a handheld metal detector, that Defendant Wright pushed him against a wall, Defendant Fogleman held his arms in the air to aggravate him, and that he was placed in a dirty cell. (Doc. 64, at 2; Doc. 64, at 6; Doc. 64, at 8; Doc. 64, at 14-16).

There is no question that these First and Eighth Amendment claims present new contexts—they are "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 582 U.S. at 139. Thornton-Bey's instant claims on their face "bear little resemblance" to "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma," the contexts previously recognized by the Supreme Court. *Abbasi*, 582 U.S. at 140.

First, the Supreme Court has never recognized a *Bivens* remedy under the First Amendment. *See Bistrian v. Levy*, 912 F.3d 79, 95 (3d Cir. 2018) (citing *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012)). Additionally, the Third Circuit has explicitly held that *Bivens* does not extend to a retaliation claim under the First Amendment. *See, e.g., Mack v. Yost*, 968 F.3d 311, 319-25 (3d Cir. 2020) (declining to extend *Bivens* to a First Amendment retaliation claim

in the prison workplace assignment context); *Bistrian*, 912 F.3d at 95-96 (declining to extend *Bivens* to a First Amendment retaliation claim in the prison restrictive housing context).

The Court next considers Thornton-Bey's conditions of confinement, physical and sexual assault, and excessive force claims under the Eighth Amendment. Of the three cases in which the Supreme Court has recognized *Bivens* claims, only *Carlson*—involving an Eighth Amendment claim—is tenably relevant. In *Carlson*, a prisoner's estate filed suit alleging that prison officials had been fully aware of the prisoner's serious "chronic asthmatic condition" as well as the "gross inadequacy" of medical facilities and prison staff. *See Carlson*, 446 U.S. at 16 n.1. The estate alleged officials failed to provide the prisoner "competent medical attention for some eight hours after he had an asthmatic attack," including an inordinate delay of his transfer to an outside hospital, all of which led to the prisoner's death. *See Carlson*, 446 U.S. at 16 n.1.

Thornton-Bey's conditions of confinement, physical and sexual assault, and excessive force claims are markedly different from the Eighth Amendment inadequate medical care claim recognized in *Carlson*. *See, e.g., Mammana v. Barben*, 856 F. App'x 411 (3d Cir. 2021) (not precedential) (rejecting prisoner's argument that *Carlson* gives footing to Eighth Amendment conditions-of-confinement claim against federal prison officials). While the claims arise under the same constitutional amendment, the Supreme Court has made clear that a common constitutional basis is not enough to link a new *Bivens* theory to an existing *Bivens* context. *See Hernandez*, 589 U.S. at 103 (indicating courts must "look beyond the constitutional provisions invoked"). This case alleges different misconduct than *Carlson*, and different legal standards would apply. Thus, these three Eighth Amendment claims differ meaningfully from *Carlson*.

The Court concludes that these First and Eighth Amendment claims present new contexts for purposes of *Bivens*.

Because the Court concludes that Thornton-Bey's claims present new contexts, the Court must turn to the second *Abbasi* step and determine whether any special factors are present. In this context, the Court asks whether "there are any special factors that counsel hesitation" in extending *Bivens*. *See Hernandez*, 589 U.S. at 102 (internal quotation marks and alterations omitted) (quoting *Abbasi*, 582 U.S. at 136). Although courts may consider various special factors, *see Bistrian*, 912 F.3d at 90 (citing *Abbasi*, 582 U.S. at 133-45 at 1856-63), two "are 'particularly weighty': availability of an alternative remedial structure and separation-of-powers concerns," *see Mack*, 968 F.3d at 320 (quoting *Bistrian*, 912 F.3d at 90).

In *Egbert*, the Supreme Court reiterated its prior emphasis on the availability of alternative remedies, *see Egbert*, 596 U.S. at 497-98, further extending the Court's longstanding view that "when alternative methods of relief are available, a *Bivens* remedy usually is not," *see Abbasi*, 582 U.S. at 145 (citing *Bush v. Lucas*, 462 U.S. 367, 386-88 (1983); *Schweiker v. Chilicky*, 487 U.S. 412, 425-26 (1988); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 73-74 (2001); *Minneci v. Pollard*, 565 U.S. 118, 125-26 (2012)). The BOP has an alternative remedial structure in place, its administrative remedy program. *See Malesko*, 534 U.S. at 68 (holding that "administrative review mechanisms" can provide "meaningful redress"—even if they do not "fully remedy the constitutional violation"). And *Egbert* makes clear that the question for this Court is not whether a *Bivens* damages remedy would be more effective, nor even whether the existing remedy is sufficient. "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Egbert*, 596 U.S. at 498. The

existence of the BOP's administrative remedy process "independently foreclose[s]" a *Bivens* remedy in this new context. *Egbert*, 596 U.S. at 497. Defendants also cite to the Prison Rape Elimination Act of 2003 and the BOP's Sexually Abusive Behavior Prevention and Intervention Program, neither of which provide a cause of action for damages in the federal arena. (Doc. 83, at 27-28; Doc. 83, at 32). As the District of New Jersey has noted, "[i]t is significant that Congress, in passing comprehensive legislation aimed at a zero tolerance policy for prison rape, opted not to include a private right of action for damages under PREA." *Shorter v. United States*, No. 19-CV-16627, 2020 WL 4188455, at *5 (D.N.J. July 21, 2020) (citations omitted).

Assuming *arguendo* the BOP's administrative remedy program, the BOP's Sexually Abusive Behavior Prevention and Intervention Program, and the PREA do not constitute alternative remedies, the Court must still consider whether there are other factors—such as separation-of-powers concerns—that weigh against creating a *Bivens* remedy to fill the void. *See Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). The essential inquiry "is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *See Abbasi*, 582 U.S. at 135. Thus, any special-factors assessment must seek to discern whether Congress would want the federal judiciary to impose "a new substantive legal liability" in a particular case. *Abbasi*, 582 U.S. at 136. In *Egbert*, the Supreme Court stressed that "even one" reason to believe the federal legislature is better equipped to provide a damages remedy means a *Bivens* action cannot proceed. *See Egbert*, 596 U.S. at 496. Congress's silence, particularly when it has already legislated in a given sphere, can be "telling" in this analysis. *See Abbasi*, 582 U.S. at 144. The Supreme Court has suggested that Congress's omission of a "standalone damages remedy against federal jailers" from the PLRA may imply a congressional intent to limit

*Carlson's* damages remedy to its context. *See Abbasi*, 582 U.S. at 149. The Third Circuit Court of Appeals has disagreed and opined that Congress's silence in the PLRA does not necessarily signal legislative intent that "a *Bivens* cause of action should not exist at all." *See Bistrian*, 912 F.3d at 93; *see also Mack*, 968 F.3d at 323-24 (quoting *Bistrian*, 912 F.3d at 93). However, the Third Circuit has also observed, "congressional silence on prison litigation can still counsel hesitation in some contexts," particularly when—as here—the alleged mistreatment is "different…than that alleged in *Carlson*." *Mammana*, 856 F. App'x at 415.

The claims before the Court warrant hesitation. The Supreme Court has never extended *Bivens* to the First Amendment and three Eighth Amendment claims before the Court. Based on the foregoing, the Court concludes, as many courts have concluded,[5] that special factors weigh against extending *Bivens* to these new contexts. Therefore, assuming, *arguendo*, that Thornton-Bey properly exhausted his administrative remedies, the Court would

---

[5] See, e.g., *Bistrian v. Levy*, 912 F.3d 79, 96 (3d Cir. 2018) (rejecting an extension of Bivens to a federal prisoner's First Amendment retaliation claim and noting that this conclusion "aligns with a strong trend in district courts, post-Abbasi, holding that a Bivens retaliation claim under the First Amendment should not be recognized"); *Mammana v. Barben*, 856 F. App'x 411, 414 (3d Cir. 2021) (not precedential) (footnote omitted) (plaintiff alleging Eighth Amendment violation for confinement for four days "in a chilled room with constant lighting, no bedding, and only paper-like clothing" did not state a Bivens claim, with the Third Circuit noting plaintiff "asks for a new implied cause of action to sue federal prison officials for unconstitutional conditions of confinement, a step never taken by the Supreme Court nor any circuit court"); *Hill v. Lappin*, 561 F.Supp.3d 481, 487 (M.D. Pa. 2021) (noting that "courts began to appreciate Abbasi's watershed scope, [and] the better-reasoned authority has declined to recognize a Bivens remedy for Eighth Amendment conditions-of-confinement and excessive force claims."); *Bone v. Ebbert*, No. 3:19-CV-112, 2022 WL 943036, at *7-9 (M.D. Pa. March 29, 2022) (declining to extend Bivens to prisoner's Eighth Amendment excessive-force claim); *Kalu v. Spaulding*, No. 3:19-CV-1621, 2022 WL 4454352, *4 (M.D. Pa. Sept. 23, 2022) ("[a]n alleged sexual assault is a new context under Bivens.").

decline to extend a *Bivens* remedy to his First and Eighth Amendment claims and would dismiss these claims.[6]

### 2.   Thornton-Bey's Inadequate Medical Care Claim Fails to State a Claim

Turning to the Eighth Amendment inadequate medical care claim, the Court finds that this claim does not present a new *Bivens* context. Thornton-Bey alleges a claim for deliberate indifference to a medical need, which was recognized as an available *Bivens* claim in *Carlson*, 446 U.S. 14. Inadequate medical care claims are "squarely within *Bivens'* purpose of deterring misconduct by prison officials" and have been allowed for many years, limiting any separation of powers concerns or fears that allowing a claim will "unduly affect the independence of the executive branch in setting and administering prison policies." *Bistrian*, 912 F.3d at 93.

Having determined that *Bivens* permits recovery here, Thornton-Bey nevertheless fails to state a claim for relief. He alleges that Defendant Wickham was deliberately indifferent to his medical needs by advising correctional staff they may use a handheld metal detector on him. For the delay or denial of medical care to rise to an Eighth Amendment violation, a prisoner must demonstrate: "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Deliberate

---

[6]Because Thornton-Bey's claims are not viable under *Bivens*, the Court declines to address Defendants' arguments as to personal involvement and qualified immunity. *See, e.g., Bistrian*, 912 F.3d at 96 n.25 (3d Cir. 2018) ("Because we conclude that [there is] not a recognized *Bivens* remedy, we again need not address whether any of the defendants are entitled to qualified immunity.").

indifference has been found where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse*, 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment…(which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)). "Allegations of medical malpractice are not sufficient to establish a Constitutional violation," nor is "[m]ere disagreement as to the proper medical treatment." *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). A "failure to provide adequate care…[that] was deliberate, and motivated by non-medical factors" is actionable under the Eighth Amendment, but "inadequate care [that] was a result of an error in medical judgment" is not. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *see also Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

Thornton-Bey complains that Defendant Wickham told correctional officers they could use a handheld metal detector on his body, causing injury to his anus. (Doc. 64, at 4). Assuming that his medical need was serious, he fails to establish that Defendant Wickham's conduct rose to a level of deliberate indifference in violation of the Eighth Amendment. Thornton-Bey does not allege that he failed to receive medical treatment or that there was any delay in care. The medical records reveal that medical staff and a physiatrist treated Thornton-Bey on numerous occasions and conclusively concluded that his belief that he suffered perianal burning and pain from a handheld metal detector was the result of delusional thinking. (Doc. 82, at 8, ¶¶ 20-21; Doc. 82-9, at 2-5; Doc. 82-15). The record clearly shows

that Thornton-Bey received continuous and responsive medical treatment throughout his incarceration.

Thornton-Bey's primary complaint is that he received substandard medical care. This argument implies his disagreement with a particular course of treatment and his own lay opinion regarding the proper course of treatment for his pain. However, mere disagreement with the selected course of treatment is not grounds for a medical deliberate indifference claim. *See Thomas v. Dragovich*, 142 F. App'x 33, 36 (3d Cir. 2005) (not precedential) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)). To the extent that Thornton-Bey asserts that Defendant Wickham's professional judgment was deficient, this also is not enough to rise to the level of a constitutional violation, and courts will not second guess whether a particular course of treatment is adequate or proper. *See Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (citing *Inmates of Allegheny Cnty. Jail*, 612 F.2d at 762). Accordingly, the Court will dismiss the Eighth Amendment *Bivens* claim for deliberate indifference to a serious medical need.

## V.   LEAVE TO AMEND

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant Thornton-Bey leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). The Court finds that amendment would be futile because Thornton-Bey cannot remedy the legal, jurisdictional, and factual defects in the amended complaint: that Thornton-Bey failed to exhaust the available administrative remedies, that sovereign immunity bars the Court's subject matter jurisdiction over Defendants in their official capacities, that *Bivens* does

not extend to the First Amendment claim and three of the Eighth Amendment claims, and

that Thornton-Bey failed to state an Eighth Amendment inadequate medical care claim.

## VI.   CONCLUSION

The Court will grant Defendants' motion to dismiss and for summary judgment.

(Doc. 76). An appropriate Order shall issue.


Dated: July 9, 2024                           s/ Karoline Mehalchick
                                              **KAROLINE MEHALCHICK**
                                              **United States District Judge**